## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BHF CHICAGO HOUSING GROUP B LLC (ICARUS) | ) ) | Case No. 20-12453 |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| _____ | ) | |

**NOTICE OF MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BID PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (B) APPROVING THE FORM AND MANNER OF NOTICE, (C) SCHEDULING A SALE HEARING AND, IF NECESSARY, AN AUCTION, (E) APPROVING THE STALKING HORSE BID, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE PURCHASE AND SALE AGREEMENT, (B) AUTHORIZING THE SALE OF THE PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (C) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on **June 23, 2020 at 10:00 a.m.** (prevailing Central Time) or as soon thereafter as counsel may be heard, we shall appear before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in his place and stead, and present the *Debtors' Motion for Entry of (I) an Order (a) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances (b) Approving the Form and Manner of Notice, (c) Scheduling a Sale Hearing and, If Necessary, an Auction, (d) Approving the Stalking Horse Bid, and (e) Granting Related Relief; and (II) an Order (a) Approving the Asset Purchase Agreement, (b) Authorizing the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (c) Granting Related Relief* (the "Motion"), at which time and place you may appear if you so desire

**THIS MOTION WILL BE PRESENTED AND HEARD TELEPHONICALLY.** No personal appearance in court is necessary or permitted. To appear and be heard telephonically on the motion, you must set up and use an account with Court Solutions, LLC. You can set up an account at www.Court-Solutions.com or by calling Court Solutions at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to General Order No. 20-03, any party that objects to the relief sought in the Motion must file a Notice of Objection no later than two (2) business days before the date of presentment. Please be advised that if a Notice of Objection is not timely filed, the Court may grant the Motion without a hearing before the date of presentment.

Dated: June 15, 2020                    Respectfully submitted,

                                        **BHF CHICAGO HOUSING GROUP B, LLC
                                        (ICARUS)**

                                        By: /s/ *Kevin H. Morse*
                                                One of Its Proposed Attorneys

                                        Scott N. Schreiber (#06191042)
                                        Kevin H. Morse (#06297244)
                                        Samuel J. Tallman (#6322843)
                                        CLARK HILL PLC
                                        130 East Randolph Street | Suite 3900
                                        Chicago, Illinois 60601
                                        T: (312) 985-5595
                                        F: (312) 985-5984
                                        sschreiber@clarkhill.com
                                        kmorse@clarkhill.com
                                        stallman@clarkhill.com

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BHF  CHICAGO  HOUSING  GROUP  B, LLC (ICARUS) | ) | Case No. 20-12453 |
| | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | |

**MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BID PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (B) APPROVING THE FORM AND MANNER OF NOTICE, (C) SCHEDULING A SALE HEARING AND, IF NECESSARY, AN AUCTION, (E) APPROVING THE STALKING HORSE BID, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE PURCHASE AND SALE AGREEMENT, (B) AUTHORIZING THE SALE OF THE PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (C) GRANTING RELATED RELIEF**

BHF Chicago Housing Group B, LLC (Icarus), debtor and debtor in possession (collectively, "Debtor"), by and through their undersigned counsel, hereby submits this motion (the "Motion") for the entry of (I) an order, substantially in the form attached hereto as **Exhibit A** (the "Bid Procedures Order"): (a) authorizing and approving the bid procedures in connection with the sale of the Property[1] free and clear of all liens, claims, and encumbrances; (b) approving the form and manner of notice of an auction and sale hearing with respect to the sale (the "Sale"); (c) scheduling such auction (if necessary) and sale hearing; (d) approving the selection of a stalking horse bidder (the "Stalking Horse Bidder"); and (e) granting related relief; and (II) at the conclusion of the Sale Hearing (as defined herein), an order (the "Sale Order")[2]:

---

[1] The "Property" means the improved real property located in Chicago, Illinois consisting of 545 low income housing units in 45 buildings as more fully described in the Agreement.

[2] A copy of the Sale Order will be served at least one (1) week prior to the Sale Hearing (as defined herein) to all

1

(a) approving the purchase and sale agreement, attached hereto as **Exhibit B** (the "Agreement")[3]; (b) authorizing and approving the Sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to the Agreement, or a marked version thereof by any Successful Bidder (as defined herein); and (c) granting certain related relief.  In support of this Motion, the Debtor respectfully state as follows:

### Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3.      The statutory bases for the relief requested herein are sections 105(a), 363, 365, 505, and 507 of title 11 of the United States Code §§ 101–1532 (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Preliminary Statement[4]

4.      On June 15, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its financial affairs as a debtor-in-possession. No trustee, examiner or committee has been appointed in this Chapter 11 Case.

5.      The nature of the Debtor's business and the factual background relating to the

---

parties receiving notice of this Motion and all parties that submit a Qualifying Bid, counterparties to any Executory Contract, and all parties that request notice related to the Sale or the Bankruptcy Case.

[3] In the event prospective purchasers and the Debtor agree to modify the Agreement prior to the Sale Hearing, the Debtor shall file a notice of revised Agreement with the Court, along with a comparison of the revised Agreement against the Agreement attached hereto as **Exhibit B**.

[4] Capitalized terms used in this Preliminary Statement but not defined herein shall have the meanings set forth elsewhere in the Motion and Agreement.

223929479.v3

Debtor's commencement of this Chapter 11 case is set forth in detail in the *Declaration of Andrew Belew in Support of Chapter 11 Case* (the "Declaration") filed on June 15, 2020 as ECF No. 4, and expressly incorporated herein by reference.

6.     After analyzing the ramifications of filing the Chapter 11 case, and alternatives thereto, the Debtor believes the Chapter 11 case will afford the Debtor the best means of preserving the value of the Property, while securing a purchaser that will stabilize the Property for the community and existing tenants.  The Chapter 11 case stands to protect the claims and interests of the Debtor's tenants, creditors, the community, and other parties in interest.

7.     The Debtor believes that any significant delay in embarking upon a sale process is likely to have a material adverse effect on the value of the Property, given the on-going Chicago winter effects on the Property, the deteriorating state of the Property, and the inability to financially respond to the needs of the few remaining tenants.

### Relief Requested

8.     By this Motion, Debtor seeks entry of the Bid Procedures Order:

a.     authorizing and approving the Bid Procedures for competitive bidding in connection with the Sale;

b.     approving the form and manner of the Sale Notice, substantially in the form attached as Exhibit 1 to the Bid Procedures Order, the Auction (as defined herein) if necessary, the Sale Hearing (as defined herein), and related matters;

c.     authorizing and approving the Stalking Horse Bidder, including Debtor's ability to grant customary Bid Protections to the Stalking Horse Bidder; and

d.     approve the following deadlines:

- Sale Notice Service:  The Debtor is authorized to serve the Sale Notice, as attached to the Bid Procedures Order as Exhibit 1, within **three (3) business days after entry of the Bid Procedures Order**;

3

- Bid Deadline:  **Wednesday, September 30, 2020** as the deadline by which all bids for the Property (as well as the deposit and all other required documentation under the Bid Procedures for Qualified Bidders) must be actually received pursuant to the Bid Procedures (the "Bid Deadline");

- Auction:  **Monday, October 5, 2020**, as the date and time the auction, if one is needed (the "Auction"), will be held at the offices of Clark Hill PLC, located at 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, or via video conference, if necessary;

- Sale Objection Deadline:  **Thursday, October 8, 2020**, as the deadline to object to the Sale transactions (the "Objection Deadline"); and

- Sale Hearing:  **The first available court date in the week following the Objection Deadline** – approximately one hundred (100) days after entry of the Bid Procedures Order – as the date and time for the hearing to approve the Sale (the "Sale Hearing").

9.      By this Motion, Debtor also seeks entry of the Sale Order at the conclusion of the Sale Hearing authorizing and approving the Sale on the terms substantially set forth in the Agreement to the Stalking Horse Bidder or a successful bidder arising from the Auction, if any (collectively, the "Successful Bidder"),

10.     Debtor reserves the right to file and serve any supplemental pleading or declaration, including any pleading summarizing the competitive bidding and sale process and the results thereof, in support of their request for entry of the Sale Order before the Sale Hearing, as appropriate and necessary in Debtor's reasonable business judgment; provided, however, that any such pleading or declaration shall be provided to the Trustee (as defined herein) in advance of filing with reasonable time for the Trustee to review and comment.

4

## Overview of the Agreement

### A.   Material Terms of the Agreement.[5]

11.   The principal terms of the Agreement are summarized in the following chart:[6]

| Agreement Provision | Summary Description |
|---|---|
| **Agreement Parties (Recitals)** | Seller:        BHF Chicago Housing Group B, LLC (Icarus)<br><br>Stalking Horse Bidder:        Saybrook Municipal Opportunity Fund VI, LLC, or its designee<br><br>Bond Trustee:        UMB Bank, N.A., as duly-appointed successor trustee |
| **Purchase Price (¶ 2)** | Total consideration equaling fifteen million one hundred fifty thousand dollars ($15,150,000.00). |
| **Acquired Assets (Recitals / Exhibit A)** | Acquired assets shall consist generally of the following:<br>• The Property as set forth and fully described in the Agreement and Exhibit A thereto. |
| **Earnest Money Deposit (¶ 2(a)-(b))** | $250,000.00, consisting of: (i) $150,000 deposited with Clark Hill PLC to apply towards attorneys' fees and costs incurred in connection with filing the Bankruptcy Case; and (ii) $100,000 deposited with the Title Company. |
| **Termination (¶ 6)** | (a)        the Bid Procedures Order has not been entered by the Bankruptcy Court within forty-five (45) days after the filing of the Sale Motion unless such date is extended by consent of the Purchaser; or (ii) the Sale Order has not been approved by the later of: (x) one hundred twenty (120) days after entry of the Bid Procedures Order, or (y) October 15, 2020; provided, however, that if Purchaser is selected as the back-up bidder at the conclusion of the auction, then this Agreement shall remain irrevocable and not terminate until sixty (60) days after entry of the Sale Order approving an Alternative Transaction (as defined in Section 3(b) herein); or<br><br>(b)        if at any time prior to the Closing of the Sale, the Property shall be destroyed or materially damaged (meaning any damage the cost of which to repair objectively exceeds seventy five percent (75%) of the Purchase Price Allocation for the particular property), by weather, wear or acts of vandalism or theft, fire or other casualty, or the Property is taken by condemnation, then the particular property shall be removed from the Sale and the Purchase Price reduced by the Purchase Price Allocation for that particular property.  Seller shall retain the proceeds of any award or insurance payment; or<br><br>(c)        Termination prior to expiration of the Due Diligence Period, subject to the terms of Section 8 of the Agreement.<br><br>The Agreement may also be terminated upon the occurrence of other conditions specified in the Agreement. |

---

[5] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[6] This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Agreement, the Agreement shall govern in all respects.

5

| Agreement Provision | Summary Description |
|---|---|
| | |
| Earnest Money Return (¶ 3(e)) | In the event the Sale to the Stalking Horse Bidder or an Alternative Transaction fails to close, including, without limitation, termination pursuant to Section 6 of the Agreement, then the Break-Up Fee and Expense Reimbursement will not be paid to the Stalking Horse Bidder, and the Stalking Horse Bidder will receive a return of $100,000 of the Earnest Money Deposit (less the Earned Earnest Money) within three (3) business days of the termination of the Agreement. |
| Cure Amounts (¶ 10) | The Stalking Horse Bidder shall be responsible for paying all amounts necessary to cure any defaults under the Assumed Service Contracts and for satisfying the requirements regarding adequate assurance of future performance. |
| Closing Consideration Adjustment | Customary closing consideration adjustment. |
| Representations and Warranties (¶ 10) | The Successful Bidder is purchasing the Property in its "AS IS/WHERE IS" condition, "WITH ALL FAULTS" and with all physical and latent and patent defects, and specifically and expressly without any warranties, representations or guarantees, either express or implied. |
| Employment of Insiders (¶ 29 / Exhibit D) | Stalking Horse Bidder and Better Housing Foundation have entered into a Portfolio Transactions Services Agreement. Better Housing Foundation is an affiliate of the Debtor. |

## Bid Procedures

### A.    The Bid Procedures

12.    To efficiently solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed certain bid procedures (the "Bid Procedures") as detailed below. The Bid Procedures are designed to encourage all entities to put their best bids forward and to maximize the value of the Property.  The proposed Bid Procedures are as follows:

    a.    **Property**.  The "Property" means the improved real property located in Chicago, Illinois consisting of 545 low income housing units in 45 buildings as more fully described in the Agreement. The Property will be sold to the Stalking Horse Bidder subject to qualified overbids.

    b.    **Bid Requirements**.  Any bid for the Property must be submitted in writing and determined by the Debtor, in its reasonable business judgment and in consultation with the Trustee[7] and City of Chicago, to have

---

[7] The "Trustee" shall mean UMB Bank, N.A., the duly-appointed and acting successor trustee under the indentures for the Multifamily Housing Revenue Bonds: Better Housing Foundation Icarus Portfolio Project (Series 2017A, Subordinate Series 2017B

6

satisfied the following requirements (the satisfaction of which creates a "Qualified Bid" and "Qualified Bidder"):

(i)      Initial Overbid:  Debtors have entered into the Agreement with Saybrook Municipal Opportunity Fund VI, LLC, or its designee, to be the Stalking Horse Bidder (the "Stalking Horse Bidder") for the purchase of the Property.  The consideration proposed by the aggregate of each competing bid seeking to acquire the Property must equal or exceed the sum of:

> (A)     cash in the amount of $15,150,000.00 (the "Stalking Horse Bid"); plus
>
> (B)     $150,000 in cash; plus
>
> (C)     The Break-Up Fee and Expense Reimbursement (defined in Paragraph 12(h) below) (collectively, the "Initial Overbid")

(ii)     Deposit:  Each bid must be accompanied by a cash deposit in the amount of five percent (5%) of the bid to be held in an escrow account to be identified and established by Debtor, with the consent of the Trustee (the "Deposit").

(iii)    Agreement:  Each bid seeking to acquire the Property shall include a clean and blackline version clearly marked to show any changes requested by the bidder compared with the Agreement and all other required provisions set forth in these Bid Procedures, including, without limitation, the City of Chicago Bid Requirements set forth in Paragraphs b(viii)(A)-(B) of these Bid Procedures.  For the avoidance of doubt, the Agreement, or any other agreement contained in a Qualified Bid, remains subject to final approval by the Court at the Sale Hearing.

(iv)     Closing Date:  Each bid must provide for a closing to occur on or within fourteen (14) days of entry of the Sale Order, unless continued by agreement.

(v)      Competing Proposal; Bid Documents:  Except as otherwise provided herein, each bid must be, in reasonable business judgment of the Debtor, in consultation with the Trustee and City of Chicago, substantially on the same or better terms than the terms of the Agreement and the Stalking Horse Bid.  Each bid must include duly executed transaction documents necessary to effectuate the restructuring transactions contemplated in the bid (the "Bid Documents").

(vi)     Demonstrated Financial Capacity; Committed Financing:  A Bidder must have, in the Debtor's reasonable business judgment, in consultation with the Trustee and City of Chicago, the necessary financial capacity to consummate the proposed transactions required by its bid.

7

Each bid must also include committed irrevocable financing, documented to Debtor, the Trustee, and City of Chicago's reasonable satisfaction, that demonstrates the bidder has or will receive sufficient debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its bid, including the City of Chicago Bid Requirements (set forth below) and identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom the Debtor or any representative should contact regarding such committed financing. Such funding commitments or other financing shall not be subject to any internal approvals, syndication requirements, diligence, credit committee approvals, or any other contingencies, and shall have covenants and conditions reasonably acceptable to the Debtor, after consultation with the Trustee and City of Chicago.

(vii)   <u>Identity</u>: Each bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid (including each equity holder or other financial backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any bid. Each bid must also include contact information for the specific person(s) whom the Debtor or its representative should contact regarding such bid.

(viii)   <u>City of Chicago Bid Requirements; Third Party Beneficiary</u>:

(A)   All Qualified Bids, including the Stalker Horse Bidder, shall provide the City of Chicago, Department of Law (Attn: Greg Janes) and Debtor with: (a) proof of access to funds to rehabilitate the Property; (b) a proposal for rehabilitation of the Property and a plan to bring the Property into full compliance with the Municipal Code of Chicago within a reasonable time from the date of purchase with specific benchmarks for achieving such compliance; and (c) either (i) allow tenants to remain at the Property for at least 90 days or for the term of their lease, whichever is greater; or (ii) provide Relocation Assistance.[8]

(B)   <u>Enforcement</u>. If the Successful Bidder fails to comply with the requirements set out in Paragraph b(viii)(A) above, the City of Chicago, Department of Law (Attn: Greg Janes) shall be entitled to

---

[8] "Relocation Assistance" shall mean referrals to comparable and suitable replacement properties at market affordable rent and the reimbursement of reasonable and documented costs, including an application fee, security deposit and moving costs, not to exceed $1,500 in aggregate per unit, related to the involuntary relocation of a tenant prior to the expiration of 90 days from the closing of the Sale or the term of the lease, whichever is greater. No Relocation Assistance shall be provided if a tenant voluntarily vacates a unit prior to or upon the expiration of the 90-day period or the term of their lease.

223929479.v3

enforce, as a third party beneficiary of the Agreement, the City of Chicago Bid Requirements set forth in the Agreement, in the Circuit Court of Cook County.

(ix)   Contingencies; No Financing or Diligence Outs:  A bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence or on any other contingency.

(x)   Irrevocable:  A Qualified Bid shall be irrevocable unless and until the Debtor accepts a higher Qualified Bid (as defined herein) and such bidder is not selected as the backup bidder (as defined herein).

(xi)   Expenses:  Each bidder presenting a bid or bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

(xii)   Authorization: Each bid must contain evidence that the bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid.

(xiii)   As-Is, Where-Is:  Each bid must include a written acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's proposed Agreement.

(xiv)   Existing Violations.  Each bid shall provide that the bidder must acquire the Property subject to all building code violations and court cases arising from building code violations (but not any monetary fines, penalties, or awards assessed before the closing date of such purchase).

c.   **Bid Deadline**.  Each bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **September 30, 2020** by each of the following:

(i)   Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com)

9

(ii)     Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: James W. Kapp III (jkapp@mwe.com)

(iii)     City of Chicago's counsel, City of Chicago, Department of Law, City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 700, Chicago, Illinois 60602, Attn: Greg Janes (greg.janes@cityofchicago.org) and Chuck King (chuck.king@cityofchicago.org).

Any party interested in submitting a bid shall have the opportunity to enter the Property and make physical inspections and/or review all contracts, leases, permits, environmental reports, financial statements, and other such books and records related to the ownership and operation of the Property within the possession and control of the Receiver ("Due Diligence"). The Debtor shall cooperate and coordinate with the interested party and Receiver with the completion of the Due Diligence prior to the Bid Deadline.

d.     **Auction**.  If one or more Qualified Bids are submitted, in addition to the Stalking Horse Bid, the Debtor will conduct an auction (the "Auction") on **October 5, 2020 at 10:00 a.m. (Central Time)**, at Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, via video conference if necessary, to determine the highest and best offer with respect to the Property or any portion thereof.

(i)     No later than **October 1, 2020, at 5:00 p.m. (Central Time)**, the Debtor shall provide electronic notice to: (a) all Qualified Bidders; (b) the Stalking Horse Bidder; (c) the Trustee; and (d) the City of Chicago that Qualified Bids were timely received and the Auction whether the Auction will take place in person or via video conference (the "Auction Notice").  The Auction Notice shall contain specific instructions on how to access the Auction if held via a video conference platform, and further instructions (including telephone number for the Debtor's attorneys) should any issues arise preventing the parties identified in (a)-(d) from accessing the Auction via Zoom at any time.

(ii)     The Auction Notice will be sent (a) via e-mail to counsel for the Stalking Horse Bidder, the Trustee, and the City of Chicago; and (b) to each Qualified Bidder via e-mail and in the manner designated by such Qualified Bidder pursuant to Paragraph 12 (b)(vii) above.  A copy of the Auction Notice and a certificate of service shall be filed with the Court no later than October 2, 2020.

(iii)     Following the Auction, the Qualified Bid(s) that, in the reasonable business judgment of Debtor, in consultation with the Trustee and City of Chicago, constitutes the highest and best offer and meets,

10

at a minimum, all the Bid Requirements set forth herein, will become the "<u>Successful Bid</u>" and the applicable Qualified Bidder, the "<u>Successful Bidder.</u>"

(iv)    Subject to court approval, the Successful Bidder will then be required to purchase the Property in accordance with the terms of the Successful Bid. If no additional Qualified Bids are submitted, the Debtor will cancel the Auction and proceed with the Stalking Horse Bid as the Successful Bid.

e.    **<u>Terms of Overbids</u>**.  During the course of the Auction, Debtor shall, after the submission of each overbid, promptly inform each Qualified Bidder which overbid reflects, in the view of the Debtor, in consultation with the Trustee and City of Chicago, the highest or otherwise best bid for the Property or any portion thereof.  All overbids in excess of the Initial Overbid at the Auction shall initially be in minimum increments of at least $50,000 in cash.

f.    **<u>Highest or Otherwise Best Bid</u>**.  When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Trustee and City of Chicago, shall consider the following factors in addition to any other factors that Debtors deem appropriate:  (i) the number, type, and nature of any changes to the applicable Agreement requested by the Qualified Bidder; (ii) the amount and nature of the total consideration; (iii) whether the Qualified Bid includes a Portfolio Transition Services Agreement on same or similar terms; (iv) the likelihood of the bidder's ability to close a transaction and the timing thereof; (v) the net economic effect of any changes to the value to be received by Debtor's estate from the transaction contemplated by the Bid Documents; (vi) the tax consequences of such Qualified Bid; and (vii) compliance with the Chicago of Chicago Bid Requirements set forth in Paragraphs b(viii)(A)-(B) above.

g.    **<u>Backup Bidder</u>**.  If an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Property or any portion thereof, as determined by Debtor in the exercise of its reasonable business judgment, in consultation with the Trustee and City of Chicago, shall be required to serve as "<u>Backup Bidder</u>." Should the Successful Bidder fail to consummate the sale of the Property, for any reason whatsoever, the Backup Bidder will become the new Successful Bidder and will be both entitled and obligated to consummate the sale of the Property. Debtor may designate as many Backup Bidders as necessary until either the Property is sold or no Qualified Bidders remain eligible to serve as Backup Bidder.

h.    **<u>Bid Protections</u>**.  In the event that the Debtor accepts a Successful Bid in accordance with the Bid Procedures (an "<u>Alternative Transaction</u>"), other

than an overbid by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to: (i) payment of a break-up fee (the "Break-Up Fee") in an amount equal to three percent (3%) of the Stalking Horse Bid; and (ii) any properly documented, reasonable costs and expenses incurred by Stalking Horse Bidder in negotiating and documenting the Proposed Transaction in an amount equal to one percent (1%) of the Stalking Horse Bid (the "Expense Reimbursement"). Notwithstanding the terms set forth herein, in no event shall the aggregate amount of the Break-Up Fee and Expense Reimbursement exceed three and three tenths percent (3.3%) of the Purchase Price. The Break-Up Fee and Expense Reimbursement shall be paid in cash from the proceeds of, and concurrent, with the closing of any Alternative Transaction or as otherwise ordered by the Bankruptcy Court. The Break-Up Fee shall be paid as and constitute a superpriority administrative expense claim senior to all other administrative expense claims and payable only from the proceeds from any Alternative Transaction, prior to any recovery by any lienholder under Section 364(c)(1) of the Bankruptcy Code. For the avoidance of doubt, the Stalking Horse Bidder shall not be provided a credit for the Break-Up Fee or Expense Reimbursement in any overbid and any such overbid must be paid in cash. Furthermore, the Break-Up Fee shall constitute a superpriority administrative expense claim solely against the proceeds of an Alternative Transaction and shall not be a claim against the Debtor's estate.

i.   **Credit Bid.**  The Trustee shall be allowed to credit bid for the Property pursuant to Section 363(k) of the Bankruptcy Code. If the Trustee is the Successful Bidder in an Alternative Transaction, the Trustee shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in cash, as well as any valid liens and claims of greater priority, within three (3) days of the Closing or, if after Closing, within three (3) days after receipt of notice by the Trustee that the Receiver's certificates have been approved by the Housing Court or other applicable authority.

j.   **Return of Deposit**.  The Successful Bidder's Deposit shall be applied to the purchase price of such transaction at closing. The Deposit of each Qualified Bidder, including the Stalking Horse Bidder if it is not the Successful Bidder or Backup Bidder, shall be held in one or more escrow accounts on terms acceptable to Debtor, after consultation with the Trustee, and shall be returned (other than with respect to any Successful Bidder or Backup Bidder) on or within five (5) business days after the Auction. If a Successful Bidder (other than the Stalking Horse Bidder) fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtor shall not have any obligation to return the Deposit attributable to such Successful Bidder, which may be retained by Debtor as damages, without limiting any and all rights, remedies, and/or causes of action that may be available to the Debtor, and Debtor shall be free to consummate the proposed transaction with the Backup Bidder

12

without the need for an additional hearing or order of the Bankruptcy Court.

k. **Return of Stalking Horse Earnest Money Deposit.** In the event the Sale to the Stalking Horse Bidder or an Alternative Transaction fails to close, including, without limitation, termination pursuant to Section 6 of the Agreement, then the Break-Up Fee and Expense Reimbursement will not be paid to the Stalking Horse Bidder, and the Stalking Horse Bidder will receive a return of $100,000 of the Earnest Money Deposit within three (3) business days of the termination of the Agreement.

l. **Reservation of Rights.** Debtor reserves its right, in its reasonable business judgment and in consultation with the Trustee and City of Chicago, to adjourn the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice. Debtor also reserves its right, on Notice of Motion and Motion, to seek to modify these bid procedures in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; (c) canceling the Auction; (d) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid); and (e) increasing the Minimum Overbid Increment.

m. **Sale Objection Deadline.** Objections, if any, to the Sale must be filed with the Court and served via email (in .pdf or similar format) so as to be **actually received** on or before **October 8, 2020** (the "Objection Deadline") or such other deadline as set by the Court:

(i)     Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com);

(ii)    Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: James W. Kapp III (jkapp@mwe.com); and

(iii)   City of Chicago's counsel, City of Chicago, Department of Law, City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 700, Chicago, Illinois 60602, Attn: Greg Janes (greg.janes@cityofchicago.org) and Chuck King (chuck.king@cityofchicago.org).

For the avoidance of doubt, any party asserting a lien in the proceeds of the Sale may file an objection to the Sale, on or prior to the Objection

Deadline, contesting the sale of the Property free and clear of such asserted liens or contesting the priority of any other lien, claim, or encumbrance against the Property.

n.  **Sale Hearing.** The Sale Hearing shall take place on **the first available court date in the week following the Objection Deadline** before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in his place and stead. The Sale Hearing may be adjourned (with the consent of the Stalking Horse Bidder or Successful Bidder and Trustee not to be unreasonably withheld) without further notice other than by announcement in open Court or on the Court's calendar. The Debtor shall file and serve a proposed order approving the Sale no later than **one (1) week prior to the Sale Hearing**.

13.     Importantly, the Bid Procedures recognize Debtor's fiduciary obligations to maximize sale value, and, as such, do not impair Debtor's ability to consider all qualified bid proposals, and preserve Debtor's right to modify the Bid Procedures as necessary or appropriate to maximize value.

**B.     Form and Manner of Sale Notice.**

14.     On or within three (3) business days of entry of the Bid Procedures Order, the Debtor will cause the Sale Notice to be served on: (a) the U.S. Trustee; (b) counsel to Trustee; (c) the Illinois Finance Authority; (d) counsel to the Stalking Horse Bidder; (e) all entities known to have expressed a bona fide interest in acquiring the Property; (f) any receiver(s) in possession of the Property; (g) the City of Chicago; (h) all known creditors of Debtor; (i) all tenants at the Property; (j) all federal, state, and local taxing authorities, recording offices or any other governmental authorities that may have claims, contingent or otherwise, against the Debtor's estate, or that are parties to governmental approvals or permits, or that have a reasonably known interest in the relief requested by the Motion; (k) all known contractual counterparties to the Executory Contracts; and (l) all parties who have filed appearances or requested notices through the Court's CM/ECF system.

14

15.     The Debtor marketed the Property for more than a year and, in addition, seeks to employ a broker during the Bankruptcy Case to continue to market the Sale of the Property until the Bid Deadline.  The Debtor encourages all known interested parties to submit a Qualified Bid for the purchase of the Property, or any portion thereof, pursuant to the Bid Procedures.

16.     The Debtor respectfully submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time and place of the Auction (if one is held); (b) the Bid Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Property; (e) instructions for promptly obtaining a copy or copies of the applicable Agreement; and (f) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds.

17.     The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  The Debtor proposes that no other or further notice of the Sale shall be required. Accordingly, the Debtor requests that this Court approve the form and manner of the Sale Notice.

223929479.v3

**Basis for Relief**

**A.    The Relief Sought in the Bid Procedures Order Is in the Best Interests of Debtors' Estate and Should be Approved.**

18.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . .") (internal citations omitted); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bid procedures that have been negotiated by a debtor in possession are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

19.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 765 (7th Cir. 2004) (in a bankruptcy sale, the "governing principle . . . is to secure the highest price for the benefit of the estate and creditors"); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

20.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated*

16

*Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate"); *In re AQP Liquidating Inc. f/k/a QT, Inc.*, No. 07-03227 (Bankr. N.D. Ill. Nov. 28, 2007) (requiring minimum overbids to exceed purchaser's offer of $410,000 by at least $41,000 (10.0 percent of total purchase price)); *In re Comdisco, Inc.*, No. 01-24795 (Bankr. N.D. Ill. Aug. 9, 2001) (requiring minimum overbids to exceed purchaser's offer of $610 million by at least $43.3 million (approximately 7.0 percent of total purchase price)).

21.     The Debtor submits that the proposed Bid Procedures will promote active bidding from seriously interested parties and will elicit the best and highest offers available for the Property.  The proposed Bid Procedures will allow the Debtor to conduct the Sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will submit the best offer for the Property and who can demonstrate the ability to close a transaction. In particular, the Bid Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

22.     The Debtor submits that the proposed Bid Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved by this Court and other Courts in this District.  *See In re Qualteq, Inc.*, No. 12-05861 (Bankr. N.D. Ill. Oct. 4, 2012); *In re Giordano's Enters., Inc.*, No. 11-06098 (Bankr. N.D. Ill. Oct. 25, 2011); *In re Canopy Financial, Inc.*, No. 09-44943 (Bankr. N.D. Ill. Jan. 27, 2010); *In*

17

*re Gas City, Ltd.*, No. 10-47879 (Bankr. N.D. Ill. Jan. 13, 2010); *In re Kimball Hill, Inc.*, No. 08-

10095 (Bankr. N.D. Ill. Sept. 9, 2008); *In re Neumann Homes, Inc.*, No. 07-20412 (Bankr. N.D.

Ill. Feb. 28, 2008).

**B.     The Form and Manner of the Sale Notice Should be Approved.**

23.     Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide creditors

with 21 days' notice of the Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice

must include the time and place of the Auction and the Sale Hearing and the deadline for filing

any objections to the relief requested herein.

24.     As noted above, within three (3) business days of entry of the Bid Procedures

Order, Debtors will cause the Sale Notice to be served upon the following parties: (a) the U.S.

Trustee; (b) counsel to Trustee; (c) the Illinois Finance Authority; (d) counsel to the Stalking

Horse Bidder; (e) all entities known to have expressed a bona fide interest in acquiring the

Property; (f) any receiver(s) in possession of the Property; (g) the City of Chicago; (h) all

creditors of Debtor; (i) all tenants at the Property; (j) all federal, state, and local taxing

authorities, recording offices or any other governmental authorities that may have claims,

contingent or otherwise, against the Debtor's estate, or that are parties to governmental approvals

or permits, or that have a reasonably known interest in the relief requested by the Motion; (k) all

contractual counterparties to the Executory Contracts; and (l) all parties who have filed

appearances or requested notices through the Court's CM/ECF system.  In addition, to the

service of the Sale Notice above, the Debtor will continue to market the Sale of the Property until

the Bid Deadline.

25.     The Debtor submits that notice of this Motion and the related hearing to consider

entry of the Bid Procedures Order, coupled with service of the Sale Notice as provided for

herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto

223929479.v3

in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

Accordingly, the Debtor requests the Court approve the form and manner of the Sale Notice.

**C.    The Stalking Horse Bid, Break-Up Fee, Expense Reimbursement are Appropriate and Should be Approved.**

26.    As noted above, the Debtor has entered into the Agreement with Saybrook Municipal Opportunity Fund VI, LLC, or its designee, as the purchaser for the Property, and designated it as the "Stalking Horse Bidder" in accordance with the Bid Procedures.  In addition, the Stalking Horse Bidder will subject its bid to higher and better offers, and has requested customary bid protections if the Stalking Horse Bidder is outbid at the Auction by other Bidders. Accordingly, the Debtor also seeks authority to offer customary bid protections for the Stalking Horse Bidder, in an amount of three (3%) percent of the Stalking Horse Bid and the Expense Reimbursement for all properly documented, reasonable costs and expenses incurred by the Stalking Horse Bidder in negotiating and  documenting  the  Sale  in  an  amount  of one percent (1%) of the Stalking Horse Bid (collectively, the "Bid Protections").  In no event shall the aggregate amount of the Break-Up Fee and Expense Reimbursement exceed three and three tenths percent (3.3%) of the Stalking Horse Bid.  The Bid Protections are intended to reimburse the Stalking Horse Bidder for expenses incurred entering into and prosecuting this Sale, including but not limited to the Stalking Horse Bidder's due diligence, and other out-of-pocket expenses, and professional fees and costs.

27.    The use of a stalking horse bidder in a public auction process for sales pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that  value."    *Official  Committee  of  Unsecured  Creditors  v.  Interforum  Holding  LLC,*

223929479.v3

2011 WL 2671254, No. 11-219, *1 (E.D. Wis. July 7, 2011).  In addition, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bid protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement."  *Id.* (internal citations omitted).

28.     Courts considering the propriety of a proposed break-up fee consider whether it is in the best interests of the debtor's estate.  *See In re Twenver, Inc.*, 149 B.R. 954, 956 (Bankr. D. Colo. 1992) (considering "(1) whether the relationship of the parties who negotiated the fee is marked by self-dealing or manipulation; (2) whether the fee hampers, rather than encourages, bidding; and (3) whether the amount of the fee is reasonable in relation to the proposed purchase price"); *Integrated Resources*, 147 B.R. at 657 (same).

29.     The Debtor believes that the approval of the Stalking Horse Bid, including the allowance of the Bid Protections, is in the best interests of the Debtor's estate and its creditors.  Any Stalking Horse Bid establishes a floor for further bidding and could potentially increase the value of the Property for the benefit of their estate.  In this case, the maximum three percent (3%) Break-Up Fee is within the range of such fees approved by this and other courts and necessary given the nature of the transaction and history of the Property.  *See, e.g., In re Johnson Publishing Company, LLC*, 19-10236 (JBS) (Bankr. N.D. Ill., Sept. 12, 2019) (Dkt. 187) (approving a break-up fee of 2.5% plus $75,000 expense reimbursement for purchase price of $1,800,000); *In re Quadrant 4 System Corp.*, 17-19689 (JBS) (Bankr. N.D. Ill., July 11, 2017 (Dkt. 53) (approving a break-up fee of 3%, plus $50,000 expense reimbursement for purchase price of $2,000,000); *In re Fairview Ministries, Inc.*, Case No. 11-04386 (SPS) (Bankr. N.D. Ill. Mar. 17, 2011) (Dkt. 159) (approving a 2.9% break-up fee for purchase price of $8.75 million);

20

*In re Brown's Chicken & Pasta, Inc.*, Case No. 09-49094 (JPC) (Bankr. N.D. Ill. Oct. 20, 2010) (Dkt. 162) (approving a 3.5% break-up fee); *In re SK Hand Tool Corp.*, Case No. 10-28882 (ERW) (Bankr. N.D. Ill. July 9, 2010) (Dkt. 53) (approving break-up fee of 4.4% plus $25,000 in expense reimbursement for purchase price of $3.25 million); *In re Hartmarx Corp.*, Case No. 09-02046 (BWB) (Bankr. N.D. Ill. June 2, 2009) (Dkt. 482) (approving a 3.1% break-up fee plus expense reimbursement of $2,000,000 for purchase price of $70.5 million); *In re Select Snacks, Inc.*, Case No. 07-18769 (PSH) (Bankr. N.D. Ill. Oct. 23, 2007) (Dkt. 93) (approving a 3.5% break-up fee for purchase price of $24.85 million); *In re Enesco*, Case No. 07-00565 (ABG) (Bankr. N.D. Ill. Jan 22, 2007) (Dkt. 74) (approving a break-up fee and expense reimbursement of 3%).

30.     Further, the contemplated Bid Protections are a critical inducement for the Stalking Horse Bidder who has expended time and resources negotiating, drafting, and performing due diligence activities necessitated by the Sale transactions, despite the fact that its bid will be subject not only to Court approval, but also to overbid by third parties. Thus, the use of the Bid Protections, including the Break-Up Fee and Expense Reimbursement, will facilitate the best and highest sale price for the Property and is in the best interests of Debtor's estate.

**D.     The Sale Should Be Approved as an Exercise of Sound Business Judgment.**

31.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) (*citing In re*

*Schipper*); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

32.     Once Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *Integrated Resources*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions.").

**1.     A Sound Business Purpose Exists for the Sale.**

33.     As set forth above, the Debtor has a sound business justification for selling the Property at this time.  The Debtor has designated a Stalking Horse Bid; however, the Property has been and will continue to be marketed to entities interested in acquiring such interest.  The sale of the Property will be subject to competing bids, enhancing Debtor's ability to receive the highest or otherwise best value for the Property.  Consequently, the ultimately successful bid or bids, whether it is the Stalking Horse Bid or any overbid, will constitute, in Debtor's reasonable business judgment, the highest or otherwise best offer for the Property and will provide a greater recovery for the bankruptcy estate than any known or practicably available alternative.

**2.     Adequate and Reasonable Notice of the Sale Will Be Provided.**

34.     As described above, the Sale Notice:  (a) will be served in a manner that provides significantly more than 21 days' notice of the date, time, and location of the Sale Hearing; (b) informs interested parties of the deadlines for objecting to the Sale; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale.  Significantly,

the form and manner of the Sale Notice will have been approved by this Court pursuant to the

Bid Procedures Order after notice and a hearing before it is served on parties in interest.

> **3.      The Sale and Purchase Price Will Reflect a Fair Value Transaction.**

35.      It is well-settled that, where there is a court-approved auction process, a full and

fair price is presumed to have been obtained for the assets sold, as the best way to determine

value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St.*

*P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001

WL 1820326, *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require

an auction procedure, . . . the auction procedure has developed over the years as an effective

means for producing an arm's length fair value transaction.").  This is especially true where, as

here, the Property will be subjected to a marketing process and scrutinized by the Debtor and

their creditors, including the Trustee.

36.      Moreover, as noted above, the Debtor will market the Property and solicit offers

consistent with the Bid Procedures through the Bid Deadline.  In this way, the number of bidders

that are eligible to participate in a competitive Auction process will be maximized.

> **4.      The Sale Has Been Proposed in Good Faith and Without Collusion, and the**
> **Successful Bidder Will Be a "Good Faith Purchaser."**

37.      The Debtor requests that the Court find that the Successful Bidder is entitled to

the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection

with the sale of the Property.

38.      Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease or property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the

> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

39.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith."   While the Bankruptcy Code does not define "good faith," courts have held that the good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made.  *See, e.g., In the Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (a purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (internal citations omitted); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

40.    The Debtor submits that the Successful Bidder will be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Agreement, or any marked versions thereof, will be good faith agreements on arms' length terms entitled to the protections of section 363(m) of the Bankruptcy Code.  First, any Sale agreement with a Successful Bidder will be the culmination of a competitive Auction process in which all parties will presumably be represented by counsel and all negotiations will be conducted on an arm's-length, good faith basis.  Accordingly, the Debtor believes the consideration to be received pursuant to the Auction will be fair and reasonable.  Second, the Bid Procedures are designed to ensure that no party is able to exert undue influence over the Sale process.  The Debtor will not choose as the Successful Bidder or Backup Bidder (as defined in the Bid Procedures) any entity

24

whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and, as may be necessary, will be prepared to present the Court through testimony or proffer at the Sale Hearing with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.  Finally, any bids that the Debtor ultimately determine to be a Successful Bid will have been evaluated and approved by the Debtor with notice to all creditors, and consultation with the Trustee and the City of Chicago. Accordingly, the Debtor believes that any Successful Bidder and the Agreement (or marked version thereof) should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

**5.      The Sale Should be Approved "Free and Clear" Under § 363(f).**

41.      Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:   (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f). The term "any interest," as used in section 363(f) of the Bankruptcy Code, is not defined anywhere in the Bankruptcy Code.  The Seventh Circuit, however, has construed the term "any interest" to be "very broad."  *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003); *Compak Co., LLC v. Johnson*, 415 B.R. 334, 338–39 (N.D. Ill. 2009).

42.      Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant Debtor's sale of the Property free and clear of all interests (i.e., all liens, claims, rights, interests, charges, or encumbrances).  *See Compak*, 415 B.R. at 338 ("Section 363(f) authorizes bankruptcy courts to approve the sale of a

debtor's property 'free and clear of any interest in such property' if one of five conditions is satisfied.").

43.     The Debtor submits that any interest satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto, or by consenting to the Sale.  The Debtor accordingly requests authority to convey the Property to the Successful Bidder, upon Debtor's receipt of the purchase price (net of closing costs), free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

**F.      Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

44.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."   Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Debtor requests that the Sale Order be effective immediately upon its entry by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

45.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the

14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 COLLIER ON BANKRUPTCY ¶ 6004.11 (15 rev. ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay should also be reduced to the amount of time actually necessary to file such appeal.  *Id.*

46.     To maximize the value received for the Property, the Debtor seeks to close the Sale as soon as possible after the Sale Hearing.  Accordingly, the Debtor hereby requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Notice

47.     Debtors have caused notice of this Motion to be given to the following parties: (a) the U.S. Trustee; (b) counsel to the Trustee; (c) counsel to the Stalking Horse Bidder; (d) the Internal Revenue Service; (e) all relevant state and local taxing authorities; (f) all tenants of the Property and any other contractual counterparties; and (g) all parties who have filed appearances or requested notices through the Court's CM/ECF system.

48.     Further, within three (3) business days of the Bid Procedures Order the Sale Notice will be provided in accordance with the notice procedures described herein and given to the following parties: (a) the U.S. Trustee; (b) counsel to Trustee; (c) the Illinois Finance Authority; (d) counsel to the Stalking Horse Bidder; (e) all entities known to have expressed a bona fide interest in acquiring the Property; (f) any receiver(s) in possession of the Property; (g) the City of Chicago; (h) all known creditors of Debtor; (i) all tenants at the Property; (j) all federal, state, and local taxing authorities, recording offices or any other governmental authorities that may have claims, contingent or otherwise, against the Debtor's estate, or that are parties to governmental approvals or permits, or that have a reasonably known interest in the relief requested by the Motion; (k) all known contractual counterparties to the Executory

27

Contracts; and (l) all parties who have filed appearances or requested notices through the Court's CM/ECF system. Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

49.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter (I) the Bid Procedures Order: (a) authorizing and approving the Bid Procedures in connection with the sale of the Property free and clear of all liens, claims, and encumbrances; (b) approving the form and manner of notice of the Auction and Sale Hearing with respect to the Sale; (c) scheduling such auction (if necessary) and sale hearing; (d) approving the selection of a Stalking Horse Bidder; and (e) granting related relief; and (II) at the conclusion of the Sale Hearing (as defined herein), the Sale Order: (a) approving the Agreement; (b) authorizing and approving the Sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to the Agreement, or a marked version thereof by any Successful Bidder (as defined herein); and (c) granting certain related relief

Dated: June 15, 2020                    Respectfully submitted,

                                        **BHF CHICAGO HOUSING GROUP B, LLC (ICARUS)**

                                        By: /s/ *Kevin H. Morse*
                                                One of Its Proposed Attorneys

                                        Scott N. Schreiber (#06191042)
                                        Kevin H. Morse (#06297244)
                                        Samuel J. Tallman (#6322843)
                                        CLARK HILL PLC
                                        130 East Randolph Street | Suite 3900
                                        Chicago, Illinois 60601

28

T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com
stallman@clarkhill.com
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com

29